IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

A.F. by and through his parents, J.F. and L.F.,

    Plaintiff,

v.

ST. TAMMANY PARISH SCHOOL BOARD,

    Defendant.

Case No. 2:23-cv-7426
Jury Demanded

# COMPLAINT

Plaintiff, by and through undersigned counsel, alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil action to redress disability-based discrimination under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq*, and the Louisiana Human Rights Act, La. Rev. Stat. § 51:2247.

2. Plaintiff also asserts federal constitutional claims under 42 U.S.C. § 1983.

3. Plaintiff also asserts tort claims under state law.

4. This Court has jurisdiction under 42 U.S.C. §§ 1983, 12132; and 28 U.S.C. § 1367(a).

5. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the Plaintiff's claims occurred there.

## PARTIES

6. Plaintiff is A.F.

7. A.F.'s parents, J.F. and L.F. are pursuing this action on his behalf.

8. A.F. is blind and autistic.

9. Defendant St. Tammany Parish School Board is the school board for St. Tammany Parish, Louisiana, consistent with La. Rev. Stat. § 17:51. Its principal place of business is 321 N. Theard St., Covington LA 70433.

## FACTUAL ALLEGATIONS

10. A.F. is a 12-year-old-boy.

11. A.F. attends Mandeville Middle School.

12. A.F. is blind.

13. A.F. also has autism, also known autism spectrum disorder.

14. Autism and blindness are both "disabilities" under federal and Louisiana antidiscrimination laws, because they are conditions that substantially limit one or more major life activities.

15. Mrs. Cheryl Barton is the principal at Mandeville Middle School. She was the principal at all relevant times.

16. Mandeville Middle School is a public school in St. Tammany Parish, operating under the jurisdiction of the St. Tammany Parish School Board. It is located at 2525 Soult St, Mandeville, LA 70448.

17. At Mandeville Middle School, A.F. uses a walking cane as an assistive device.

18. On January 31st, 2023, Parents J.F. and L.F. received a call from the principal, Mrs. Barton describing an incident where A.F. was "love tapped" by a staff member.

19. J.F. and L.F. believe the incident was intentionally downplayed by Mrs. Barton.

20. In the next month, February 2023, three paraprofessionals suddenly left the school.

21. These paraprofessionals were Tiffany Bourgeois, Leslie Cookmeyer, and Angela Rayer.

22. The sudden departure of three paraprofessionals grabbed J.F.'s attention, and he requested video footage of the alleged "love tap" incident.

23. Barton responded that she did not know the time and date of the incident and claimed she was unable to obtain video footage of the incident.

24. A.F.'s parents learned from other parents that various paraprofessionals were engaging in unlawful behavior towards special needs children, including their son, A.F. These behaviors included dragging A.F., kicking A.F. and slamming his head down into a cafeteria table.

25. The school never provided any incident reports to A.F.'s parents.

26. A.F.'s parents believe that no such incident reports were ever written.

27. J.F. spoke to a school resource officer regarding the incident, who reported that he had watched surveillance footage in which A.F. was walking down the hallway with his cane with a paraprofessional, and the paraprofessional intentionally kicked A.F. in the leg.

28. No incident report was written for this incident.

29. J.F. made multiple requests to obtain video footage of the alleged incident in the hallway, but was told by a staff member, Kimberly Gardner, that it had been deleted because the video was older than 31 days.

30. On the same day as the hallway incident, a different paraprofessional forcefully slammed A.F.'s head into a table in the cafeteria.

31. There were no formal incident reports for either incident.

32. J.F. and L.F. were not informed of either incident for three months.

33. J.F. and L.F. later learned that both paraprofessionals were terminated the same day the incidents occurred.

34. When asked by J.F. why he and his wife were never told about this when it happened, Mrs. Barton replied, "I must have forgotten."

35. A.F.'s parents later learned that one of the paraprofessionals had, on a prior occasion, intentionally hit A.F. in the head with a walkie-talkie.

36. One of A.F.'s teachers who had witnessed the abuse notified Barton, who explicitly told the teacher not to speak with the parents about any of these incidents because she was "going to handle it."

37. However, this teacher later learned that Mrs. Barton had not, in fact, discussed these incidents with J.F. and L.F.

38. J.F. and L.F. were later informed of another incident where a staff member saw a paraprofessional strike A.F., and heard the paraprofessional say, "There. Now you know how it feels."

39. Upon information and belief, the examples of physical and verbal abuse listed in this complaint are not exhaustive. Plaintiff alleges that staff members regularly engaged in similar or worse physical and verbal abuse when other adults were not in the classroom to witness it.

40. Upon information and belief, the paraprofessionals who abused A.F. were motivated, at least in part, by animus for children with autism and/or blindness.

41. Upon information and belief, the paraprofessionals who abused A.F. regularly made offensive comments and epithets about students with disabilities.

42. Barton and the School Board failed to adequately screen Mandeville Middle School employees.

43. Barton and the School Board failed to adequately train and supervise Mandeville Middle School's employees on their obligations to children with disabilities.

44. The Louisiana Children's Code requires that school employees immediately report alleged or suspected child abuse to the Department of Children and Family Services (DCFS) or law enforcement. La. Child. Code art. 609–10.

45. Barton is a "mandatory reporter" under the Louisiana Children's Code and had a duty to report to the authorities the incidents that outside teachers reported to her, but she did not. La. Child. Code art 609.

46. In failing to report these abuses, Barton was motivated by animus against, or deliberate indifference to, Plaintiff's disabilities.

47. In failing to adequately screen, train, and supervise Mandeville Middle School's special-education employees, Barton and/or the School Board were motivated by animus for, deliberate indifference to, children with disabilities.

48. The School Board is vicariously liable for the wrongdoing of its employees.

49. Upon information and belief, the School Board knew or should have known about the abuses listed in this complaint since January 2023.

50. The School Board has since been apprised of all or most of the allegations contained in this Complaint, but has taken no action to modify its policies or procedures.

## FIRST CLAIM – Disability Discrimination (ADA)

51. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

52. Defendant violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, because it is a public entity that discriminated against Plaintiff on the basis of his disability.

53. Defendant physically harmed Plaintiff because of animus for children with disabilities.

54. Defendant treated Plaintiff less favorably than non-disabled or differently disabled students.

55. Defendant knowingly created a hostile education environment on the basis of disability.

56. Defendant denied Plaintiff a reasonable accommodation for his disability.

57. The discriminatory actions of Defendant were intentional and taken with deliberate indifference to Plaintiff's rights.

58. Plaintiff suffered injuries as a result of the Defendant's acts or omissions.

### SECOND CLAIM – Disability Discrimination (La. Rev. Stat. § 51:2247)

59. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

60. Defendant violated La. Rev. Stat. § 51:2247 because it "den[ied] an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, … on the grounds of … disability."

61. Defendant physically harmed Plaintiff because of animus for children with disabilities.

62. Defendant treated Plaintiff less favorably because of his disability.

63. Defendant knowingly created a hostile education environment on the basis of disability.

64. Defendant denied Plaintiff a reasonable accommodation for his disability.

65. Plaintiff suffered injuries as a result of Defendant's acts or omissions.

### THIRD CLAIM – Substantive Due Process, 42 U.S.C. § 1983

66. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

67. The Defendant is a "person[s]" acting under color of state law under 42 U.S.C. § 1983.

68. The Defendant violated Plaintiff's right to substantive due process under the Fifth and Fourteenth Amendments to the U.S. Constitution, namely, their right to bodily integrity.

69. The Defendant knew or should have known that its acts or omissions were unconstitutional.

70. The actions of Defendant were intentional and taken with deliberate indifference to Plaintiff's rights.

71. The Defendant's actions caused Plaintiff damages.

## FOURTH CLAIM – Excessive Force, 42 U.S.C. § 1983

72. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

73. The Defendant is a "person[s]" acting under color of state law under 42 U.S.C. § 1983.

74. The Defendant violated Plaintiff's rights under the Fourth Amendment to the U.S. Constitution, namely, the right against using excessive force.

75. The Defendant knew or should have known that its acts or omissions were unconstitutional.

76. The actions of Defendant were intentional and taken with deliberate indifference to Plaintiff's rights.

77. The Defendant's actions caused Plaintiff damages.

## FIFTH CLAIM – Equal Protection, 42 U.S.C. § 1983

78. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

79. The Defendant is a "person[s]" acting under color of state law under 42 U.S.C. § 1983.

80. The Defendant violated Plaintiff's Equal Protection rights under the Fourteenth Amendment by treating them less favorably than non-disabled or differently disabled students on the basis of his disability.

81. There was no rational basis for the Defendant's unequal treatment of Plaintiff.

82. The Defendant knew or should have known that its actions were unconstitutional.

83. The actions of Defendant were intentional and taken with deliberate indifference to Plaintiff's rights.

84. The Defendant's actions or omissions caused Plaintiff damages.

## SIXTH CLAIM – Louisiana Battery)

85. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

86. Defendant committed battery against Plaintiff, one or more of its employees intentionally made a harmful or offensive contact with Plaintiff.

87. Defendant is vicariously liable for the torts of its employees.

88. Plaintiff suffered injuries as a result of this contact.

## SEVENTH CLAIM – Negligence

89. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

90. The Defendant had a duty to Plaintiff to conform its conduct to a specific standard of care, and its conduct fell below that standard of care.

91. The Defendant's negligence caused Plaintiff damages.

## EIGHTH CLAIM – Negligent hiring, training, and/or Supervision, 42 U.S.C. § 1983

92. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

93. The Defendant is a "person[s]" acting under color of state law under 42 U.S.C. § 1983.

94. The Defendant was negligent with regard to its hiring, training, and/or supervision of special education employees.

95. This negligence was the moving force behind the violations of Plaintiff's constitutional rights.

96. The Defendant knew or should have known that its failure to adequately hire, train, and/or supervise its employees would cause a constitutional violation.

97. The Defendant had actual or constructive notice of a pattern of similar constitutional violations caused by its policies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment:

1. Declaring that Defendant's conduct as set forth above violates 42 U.S.C. § 12132 and La. Rev. Stat. § 51:2247.

2. Declaring that Defendant violated Plaintiff's constitutional rights under the Fifth and Fourteenth Amendments to the U.S. Constitution.

3. Declaring that Defendant is liable for Louisiana battery and negligence;

4. Declaring that the School Board is liable under § 1983 for negligent hiring, training, and supervision;

5. Awarding compensatory damages, expectation damages, punitive damages, nominal damages, and any other form of damages available to Plaintiff for injuries caused by Defendant's discriminatory and tortious conduct, pursuant to 42 U.S.C. § 12133, La. Rev. Stat. § 51:2264, and any other applicable provisions.

6. Awarding costs and attorney's fees to Plaintiff, pursuant to 42 U.S.C. § 12133, La. Rev. Stat. § 51:2264, and any other applicable provisions;

7. Granting such further relief as this Court may deem just and proper.

## JURY DEMAND

Consistent with Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to every claim for which he is entitled.

Respectfully submitted,

December 29, 2023

   /s/ *Chris Edmunds*

Chris Edmunds, Counsel for Plaintiff
LBSA: 37670
Chris Edmunds Law Office
4937 Hearst St., Suite 2F
Metairie LA 70001
(504) 314-0034
chrisedmundslaw@gmail.com

9