UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| A.F. BY AND THROUGH HIS PARENTS, J.F. & L.F. | CIVIL ACTION |
| VERSUS | NO. 23-7426 |
| ST. TAMMANY PARISH SCHOOL BOARD | SECTION "L" (1) |

**ORDER & REASONS**

Pending before the Court is Defendant St. Tammany Parish School Board's ("St. Tammany") motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff A.F.'s[1] lawsuit for failure to state a claim upon which relief can be granted. R. Doc. 13. A.F. opposes the motion. R. Doc. 19. St. Tammany filed a reply. R. Doc. 20. Having considered the briefing, record, applicable law, and oral argument, the Court rules as follows.

I. **BACKGROUND**

This case arises out of a series of alleged incidents in which three paraprofessionals at Mandeville Middle School ("MMS") were accused of physical violence toward A.F., a student there who is blind and autistic. R. Doc. 10 at 3-4. After learning of the incidents, A.F.'s parents brought suit against the school district on A.F.'s behalf. A.F.'s lawsuit, which asserts claims under 42 U.S.C. § 12131, 42 U.S.C. § 1983, and Louisiana law, was filed in this Court pursuant to federal question jurisdiction and supplemental jurisdiction. R. Doc. 1 at 1; 28 U.S.C. § 1367(a).

A.F. is a twelve-year-old student at MMS. R. Doc. 10 at 2. Because of his blindness and autism, which A.F. asserts are disabilities under both federal and state law, he is accompanied

---

[1] A.F. is a minor, thus this suit is brought on his behalf by his parents J.F. and L.F.

1

throughout the school day by a paraprofessional, who is an employee of the school district. *Id.* A.F. states that on January 31, 2023, he was abused by paraprofessional staff in three different incidents: one intentionally kicked him and knocked him over, another slammed his head into a cafeteria table, and a third staff member hit him in the face with a walkie talkie. *Id.*

A.F.'s parents learned about the first incident through a school resource officer, who reportedly had witnessed it through security footage. *Id.* at 3. The officer stated that it appeared A.F. accidentally made contact with the aide's leg with his walking cane, and the aide, Tiffany Bourgeois, responded by kicking A.F. in the leg and stating, "There. Now you know how it feels." *Id.* A.F. contends that another school official had observed this incident as well and timely reported it to the school's principal, Cheryl Barton. *Id.*

The same day, another aide, Leslie Cookmeyer, allegedly slammed A.F.'s head into the cafeteria table where he was eating lunch. *Id.* At the time, A.F. states that he was engaging in a "stimulation" behavior, commonly known as "stimming," which occurs because of his autism. *Id.* A.F. contends that he was rocking back and forth while eating his lunch, and Cookmeyer got frustrated and slammed his head on the table to get him to stop. *Id.* Another employee allegedly witnessed this incident and also reported it to Principal Barton. *Id.*

The third incident, which allegedly occurred on the same day, involved a third paraprofessional, Angela Rayer. *Id.* A.F.'s complaint states that he was reaching for a door handle when Rayer forcefully hit him in the head with her walkie talkie to keep him from making contact with the handle. *Id.* The school apparently only learned about this third incident after school officials watched security footage of the other two events. *Id.* at 4.

A.F. contends that school officials placed Bourgeois on administrative leave on the same day that the first incident occurred. *Id.* Following an administrative investigation, Bourgeois was allegedly asked to resign, and she did. *Id.* However, A.F. states that Rayer and Cookmeyer were

not immediately sanctioned and, as a result, remained with A.F. for several more weeks. *Id.* Later administrative investigations into their conduct led to school officials asking them to resign as well. *Id.* A.F. notes that the school board accepted the resignations of all three paraprofessionals on March 9, 2023. *Id.*

A.F.'s parents contend that they were notified by the school on the day of the incidents yet were merely told that A.F. was "lovetapped" by a school employee and there was nothing to be concerned about. *Id.* A.F.'s parents allege that Principal Barton only referenced one of the three incidents that day, and because it was intentionally downplayed, they did not think to investigate the matter more closely. *Id.* In February 2023, A.F.'s parents learned that three paraprofessionals—Bourgeois, Rayer, and Cookmeyer—had suddenly resigned, which prompted them to inquire further into the January 31, 2023 incident. *Id.* A.F.'s father claims he asked MMS for the security footage from that day, but Principal Barton allegedly made excuses as to why she could not obtain it. *Id.* After lodging several more requests, A.F.'s father stated that a school employee told him that the footage had been deleted as it had been more than thirty-one days since the incident occurred. *Id.*

A.F.'s parents aver that Principal Barton told a teacher not to speak with anyone about the incidents because she was going to handle it. *Id.* at 5. Additionally, A.F.'s parents state that when they asked Principal Barton why she did not tell them about the other two incidents from that day, she said that she must have forgotten about them. *Id.*

A.F. sued St. Tammany as a result of the incidents at MMS. R. Doc. 1. In his first complaint, A.F. states eight causes of action against St. Tammany: (1) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; (2) violation of Louisiana disability discrimination law, La. Rev. Stat. § 51:2247; (3) violation of substantive due process; (4) use of excessive force; (5) violation of equal protection rights; (6) state law battery; (7) state law

negligence; and (8) negligent hiring, training, and/or supervision. *Id.* at 5-8. A.F. also requested a jury trial. *Id.* at 9. St. Tammany responded with a 12(b)(6) motion to dismiss for failure to state a claim, arguing that A.F. hadn't pleaded sufficient factual allegations to support his federal law claims, and therefore, the Court should decline to exercise supplemental jurisdiction over the remaining state law causes of action. R. Doc. 7.

A.F. then filed an amended complaint in accordance with Fed. R. Civ. P. 15(a)(1), in which he sought to cure some of the alleged deficiencies. R. Doc. 10. St. Tammany responded by filing a second 12(b)(6) motion to dismiss A.F.'s first amended complaint, which is the present motion before this Court. R. Doc. 13. The Court heard oral argument on St. Tammany's second 12(b)(6) motion on April 24, 2024.

**II.    PRESENT MOTION**

In its instant 12(b)(6) motion to dismiss, St. Tammany argues that A.F. has not pleaded sufficient factual material to supports his federal claims, and, therefore, the Court should not grant supplemental jurisdiction under 28 U.S.C. § 1367 as to A.F.'s remaining state law claims. R. Doc. 13. St. Tammany states that A.F.'s claims for disability discrimination under both federal and state law, and his claim for a substantive due process violation, fall short of the standard for stating a claim. *Id.* at 4. Under the ADA, plaintiffs must prove: (1) that they have a qualifying disability; (2) that they are being denied benefits of services, programs, or activities for which the public entity is responsible; and (3) that such discrimination is by reason of their disability. *Id.* at 4. St. Tammany argues that A.F. has only alleged sufficient factual allegations to support the first factor, and not the second and third, because the first amended complaint does not contend that A.F. is being denied benefits or services because of his disability. *Id.* La. Rev. Stat. § 51:2247 requires a similar showing, and St. Tammany argues that the first amended complaint "does not demonstrate that MMS staff denied A.F. the full and equal enjoyment of any services, privileges, or

4

accommodations on account of his disability." *Id.*

St. Tammany contends that the equal protection claim is not adequately supported either. *Id.* To state a claim for an equal protection violation under 42 U.S.C. § 1983, A.F. must allege facts establishing that: (1) he was intentionally treated differently from others similarly situated, and (2) there was no rational basis for him to be treated differently. *Id.* Here, like with the ADA and Louisiana disability discrimination claims, St. Tammany argues that A.F. failed to sufficiently allege facts demonstrating that he received less favorable treatment than others at MMS. *Id.* at 6. St. Tammany notes that A.F. only made conclusory statements about unequal treatment, which are not enough to state a claim. *Id.*

Furthermore, St. Tammany argues that A.F.'s complaint is insufficient to state claims for violations of substantive due process, excessive force, and battery. *Id.* at 6-8. To allege a substantive due process s violation, A.F. must show "that [he] ha[s] asserted a recognized liberty or property interest within the purview of the Fourteenth Amendment, and that [he] [was] intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Id.* at 6. St. Tammany concedes that A.F. has a constitutionally protected right to bodily integrity, but argues that A.F. has neither pleaded sufficient facts to demonstrate that St. Tammany acted under color of state law, nor that it acted intentionally or with deliberate indifference toward A.F.'s rights. *Id.* Moreover, because Louisiana provides a meaningful post-deprivation remedy—a suit for battery—St. Tammany argues that A.F.'s substantive due process claim must fail. *Id.* at 7.

Additionally, St. Tammany contends that plaintiffs must prove that they suffered an injury to bring a claim for excessive force. *Id.* Although A.F. has stated that the paraprofessionals physically abused him, St. Tammany argues that A.F. has not asserted that he suffered injury as a result of that contact. *Id.* at 7. St. Tammany also takes issue with A.F.'s battery claim, arguing that it is not supported by facts that indicate the paraprofessionals acted intentionally. *Id.* at 8.

Finally, St. Tammany contends that A.F. failed to state a claim for negligence, including negligent hiring. *Id.* at 8. While A.F. broadly concludes that St. Tammany breached its duty to A.F., St. Tammany states that A.F. does not identify what that duty was. *Id.* St. Tammany contends that A.F. recites the standard for negligence but does not assert sufficient facts to support those elements. *Id.* at 9.

St. Tammany asks this Court to grant its 12(b)(6) Motion to Dismiss. *Id.* at 10. In the alternative, it asks that, should the Court find that A.F.'s federal claims are lacking but that some state claims can proceed, it decline to exercise supplemental jurisdiction over those remaining state claims and remand the case back to state court. *Id.*; 28 U.S.C. § 1367(c)(3). St. Tammany notes that the case has only been pending before this Court for three months, and the parties are all located in St. Tammany, making it the more convenient forum. *Id.*

In opposition, A.F. first urges the Court to strike St. Tammany's motion as untimely. R. Doc. 19. A.F. filed his amended complaint on March 6, 2024 and he argues that pursuant to Federal Rule of Civil Procedure 15, a defendant must file a responsive pleading no later than fourteen days after being served with an amended complaint, which would make a response due by March 20, 2024. *Id.* at 2-3. St. Tammany filed the instant 12(b)(6) motion on March 21, 2024, and A.F. argues that the motion should be dismissed as untimely on these grounds. *Id.*

Next, A.F. argues that his amended complaint pleads sufficient facts to support his disability claims under both federal and state law. *Id.* at 3. A.F. argues that there are two ways to set forth a discrimination claim under the ADA and that he has alleged facts to support both approaches: (1) that he was discriminated against because of his disability, and (2) that he was denied a reasonable accommodation on account of his disability. *Id.* at 5. He argues that the incidents with each paraprofessional were motivated by A.F.'s disabilities – in the case of the walking cane and the door handle, his blindness, and in the case of his head slammed on the table,

6

his autism. *Id.* at 5-7. At the pleading stage specifically, A.F. alleges he need not show a similarly situated student experienced more favorable treatment. *Id.* at 7 (citing *Pickett v. Texas Tech University Health Sciences Center*, 37 F.4th 1013, 1019 (5th Cir. 2022)). However, A.F. nevertheless surmises that other students without conditions like blindness and autism were not subjected to violent corrective measures, and that St. Tammany's claim that he specifically identify these students and instances is also not required at the pleading stage. *Id.* at 7-8 (citing *Cicalese v. University of Texas Medical Branch*, 924 F.3d 762, 766-67 (5th Cir. 2019)). A.F. further argues that he can show direct evidence of disability-motivated discrimination when he alleges that the paraprofessionals called him anti-disabled slurs. *Id.* at 8.

A.F. also argues that he sets forth facts showing a disability discrimination claim based upon the denial of reasonable accommodations. *Id.* He notes first that St. Tammany didn't address this theory at all and therefore any opposition is waived, and he then argues that Fifth Circuit caselaw establishes that violent responses to autistic students in schools constitutes denial of reasonable accommodations when non-violent alternatives are available. *Id.* at 9-10 (first citing *Wilson v. City of Southlake*, 936 F.3d 325, 331-32 (5th Cir. 2019); then citing *Phillips ex rel J.H. v. Prator*, No. 20-30110, 2021 WL 3376524, at *4 (5th Cir. Aug. 3, 2021)). A.F. reiterates these arguments to support his claims for discrimination under Louisiana state law, as the requirements are substantially the same. *Id.* at 10-11.

Next, A.F argues that he sets forth facts to support his equal protection violations because there is simply no rational basis for "slamming a child's head into a cafeteria, kicking a child, or hitting a child in the face with a walkie talkie." *Id.* at 11. Again, A.F. refutes that he must provide specific instances of children who were similarly situated and yet treated differently than him at the pleading stage given the lack of discovery at this juncture. *Id.* at 12-13 (citing *Johnson v. Johnson*, 385 F.3d 503, 530-31 (5th Cir. 2004)).

7

A.F. argues that St. Tammany misconstrues his burden at the pleading stage as to his claims for substantive due process violations, nothing that it is obvious that public school teachers are acting under the color of state law and that the behavior alleged is clearly intentional and deliberately indifferent. *Id.* at 13. Further, he alleges that whether an alternative remedy exists elsewhere has no bearing on whether a plaintiff in this circumstance can file a claim under § 1983. *Id.* On his Fourth Amendment claims, A.F. asserts that the Fifth Circuit considers excessive force like what he suffered at school properly analyzed under Fourth Amendment jurisprudence. *Id.* at 14-15. A.F. scoffs at St. Tammany's position that kicking, hitting, and slamming a child's head into a table somehow does not constitute battery. *Id.* at 15-16. Last, A.F. argues that his negligence and negligent hiring claims survive a 12(b)(6) motion because he sets forth facts that could show the school violated several statutes, which would constitute negligence per se, and that the various incidents involving these different paraprofessionals on the same day, compounded by their remaining in classrooms for weeks after, demonstrate that the school acted with deliberate indifference. *Id.* at 16-19.

### III. APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw

all reasonable inferences in favor of the plaintiff, *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions*." Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

## IV.   DISCUSSION

At this stage, under the standard for a 12(b)(6) motion, the Court finds that A.F. has sufficiently pleaded facts to support plausible claims for relief. At oral argument, St. Tammany argued that much of the amended complaint consists of conclusory statements and legal conclusions that are not entitled to the presumption of truth. For example, St. Tammany pointed to paragraphs 54 and 55 of the amended complaint, which address the negligent hiring and supervision claim, to say that these paragraphs lack the facts necessary to support such recitation of the elements and just a bare recital is not enough to plead. St. Tammany also alleged that paragraph 60, which states that the school board is vicariously liable for these acts of the employees, states only a legal conclusion without the facts to support how and why vicarious liability would apply.

However, the Court finds that the facts A.F. pleads are enough to infer plausible claims. For example, the conduct A.F. describes – the paraprofessional hitting him in the face with a walkie talkie and stating "now you know how it feels" (paragraphs 21-23), the paraprofessional slamming his head into a cafeteria table out of frustration with behavior resulting from his autism (paragraphs 24-28), and the paraprofessional kicking him because of his walking cane (paragraphs 29-31) –are enough to show that the abusive conduct alleged may constitute excessive force, disability discrimination, a violation of due process and equal protection, battery, and negligence. Further, many of the facts St. Tammany claimed A.F. must include in his complaint are within the exclusive control and custody of St. Tammany, such as whether the paraprofessionals had a history of similar

conduct at this school or others.

The incidents A.F. describes provide enough facts to survive St. Tammany's motion and therefore, for the foregoing reasons, St. Tammany's 12(b)(6) motion is **DENIED**.

New Orleans, Louisiana, this 25th day of April, 2024.

_____
United States District Judge