UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| A.F., by and through his parents, J.F. AND L.F. | * | CIVIL ACTION NO. 23-7426 |
| | * | JUDGE ELDON E. FALLON |
| VERSUS | | |
| | * | MAGISTRATE JUDGE |
| ST. TAMMANY PARISH SCHOOL BOARD | | JANIS VAN MEERVELD |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*

**ORDER & REASONS**

Before the Court is a Re-urged Motion for Summary Judgment filed by Defendant St. Tammany Parish School Board. R. Doc. 94. Plaintiffs opposed the motion. R. Doc. 98. Defendant did not reply. Considering the Court's prior Order & Reasons on Defendant's first motion for summary judgment, and the record, briefing, and applicable law, the Court now rules as follows.

I.       BACKGROUND

The Court summarized the background of this case in its prior Order & Reasons granting in part and denying in part Defendant's first motion for summary judgment. R. Doc. 81. In essence, this suit is the result of the alleged abuse faced by A.F., a blind and autistic child, at the hands of three of his middle school's staff members. These paraprofessionals, who are employees of the school district, accompanied A.F. throughout the school day. Plaintiffs A.F. and his parents J.F. and L.F. ("Plaintiffs") claim that on January 30, 2023, A.F. was abused by various paraprofessional staff in three different incidents: (1) Tiffany Bourgeois kicked him, (2) Angela Rayer shoved him and hit him in the face with a walkie talkie, and (3) Leslie Cookmeyer pushed his head into the cafeteria table.

A.F.'s parents brought claims on his behalf and in their own right against the St. Tammany Parish School Board (the "School Board"). In the Second Amended Complaint, Plaintiffs state

1

eight causes of action on A.F.'s behalf against the School Board: (1) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; (2) violation of Louisiana's analogous disability statute, the Louisiana Human Rights Law ("LHRL"), La. R.S. § 51:2247; (3) 42 U.S.C. § 1983 claim for violation of substantive due process; (4) § 1983 claim for use of excessive force; (5) § 1983 claim for violation of equal protection rights; (6) state law battery; and (7) state law negligence. R. Doc. 56 at 9–11. A.F's parents also bring a negligence claim and intentional infliction of emotional distress ("IIED") claim on their own behalf arising out of Defendant's alleged withholding of video footage of the three incidents. *Id.* at 12. Plaintiffs have not sued the three paraprofessionals.

The School Board previously moved for summary judgment on all of Plaintiffs' claims. R. Doc. 65. The Court granted its motion with respect to A.F.'s parents' claim for negligent infliction of emotional distress. R. Doc. 81 at 31. It denied the motion with prejudice as to Plaintiffs' ADA claim, LHRL claim, and state law battery claim. *Id.* at 22–26, 31–32. Those claims are therefore not subject to reanalysis here. However, the Court denied *without* prejudice certain parts of Defendant's motion, permitting the School Board to re-urge two arguments: (1) that Plaintiffs have no competent summary judgment evidence to support the School Board's *Monell* liability,[1] *id.* at 9–22; and (2) whether the School Board can unequivocally establish its entitlement to Louisiana statutory immunity as to Plaintiffs' IIED and negligent training claims, *id.* at 32–35.

The Court found summary judgment to be premature as to those issues because, at that time, the Court observed that the paraprofessionals' ongoing state criminal prosecution interfered with the discovery process. As such, the Court permitted Defendant to re-urge its motion after

---

[1] The Court has already found that Plaintiffs submitted sufficient evidence to satisfy the first of two requirements to put forth a plausible § 1983 claim: the presence of a constitutional violation. R. Doc. 81 at 9–22. Thus, the Court only permitted Defendant to re-urge its arguments as to the second prong of the § 1983 analysis: evidence of *Monell* liability. *Id.*

2

Plaintiffs received an opportunity to "cure the deficiencies" of the record evidence—notably, the lack of evidence as to an official policy or custom that was the "moving force" behind A.F.'s plausible constitutional injuries, or evidence of the School Board's deliberate indifference to A.F.'s and other students' constitutional rights through the inadequate training of its employees. *Id.* at 16–22. Similarly, the Court observed that the ongoing criminal investigation may have prevented Defendant from securing key evidence to support its affirmative defense that it is entitled to discretionary immunity on Plaintiffs' negligent training and IIED claims. *Id.* at 32–34. The Court permitted the School Board to "re-urge its discretionary immunity argument with more specificity" at a later time. *Id.* at 35.

## II. PRESENT MOTION

Defendant now re-urges its motion for summary judgment. R. Doc. 94. First, the School Board avers that Plaintiffs' § 1983 claims cannot survive summary judgment. It maintains its position that the paraprofessionals' actions do not rise to the level of a constitutional violation, causing Plaintiffs' § 1983 claims to fail as a matter of law. R. Doc. 94-1 at 6–15. The School Board also presses that Plaintiffs failed to unearth any additional evidence to support its liability under *Monell v. New York City Department of Social Services*, particularly with respect to evidence of a causal link between a School Board policy and the alleged violations of A.F.'s constitutional rights. *Id.* at 15–18.

Second, the School Board addresses its position on its entitlement to discretionary immunity as to Plaintiffs' negligent training and IIED claims. *Id.* at 18–25. It generally argues that the School Board's discretionary and policymaking actions were never criminal, fraudulent, malicious, or outrageous such that immunity would not apply. *Id.* at 18–25. On the negligent training claim, it submits that hiring and training "is unquestionably within the course and scope

3

of the hiring principal's employment" thus entitling the School Board to immunity. *Id.* at 21. And relevant to the IIED claim that is rooted in the School Board's actions surrounding J.F. and L.F.'s public records request, the School Board argues that the school's superintendent and principal were engaged in discretionary actions in furtherance of a social policy, so their actions fall within the immunity statute. *Id.* It also submits that the employees' communications with the parents were based on information that the professionals truly believed at the time and were not the kind of outrageous, flagrant, reckless acts that the statute intended to carve out of its immunity protections. *Id.* at 24.

Plaintiffs oppose the motion. R. Doc. 98. As a preliminary matter, they ask the Court to disregard any arguments advanced by Defendant that target the merits of claims which the Court resolved in its first Order & Reasons. As to ripe arguments, Plaintiffs briefly addressed the School Board's *Monell* liability, stating that they "decline to offer new evidence or argument in support of" establishing the School Board's *Monell* liability—a core component of a successful § 1983 claim. *Id.* at 2. Plaintiffs do, however, press that the School Board is not entitled to immunity on the negligent training and IIED claims at the summary judgment stage because it did not bear the burden of establishing its entitlement to this affirmative defense on either claim. *Id.* at 4–7.

Specifically, Plaintiffs argue that jurors could conclude that employee training and public records responses are "operational" actions that are not entitled to immunity, rather than "policymaking" actions that may receive immunity. *Id.* at 5. Even more, if one assumed the actions are "policymaking," the School Board would not meet the second prong of the immunity defense requirement—showing that that their actions were unequivocally not criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant. *Id.* at 6 (quoting La. R.S. § 9:2798.1(C)). Thus, because the School Board did not demonstrate its entitlement to the defense

4

as a matter of law by showing that no reasonable juror could disagree with its position that it is entitled to immunity, Plaintiffs submit that their negligent training and IIED claims must survive. *See generally id.*

### III. LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. Fed. R. Civ. P. 56(c*)*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if its resolution in favor of one party may affect the outcome of the case. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

### IV. LAW & ANALYSIS

The parties presently dispute whether Plaintiffs may proceed to trial on their § 1983 claims because they have evidence to support the School Board's *Monell* liability, and whether Defendant has proven that it is indisputably entitled to an immunity defense on Plaintiffs' state law negligent training and IIED claims. The Court takes each issue in turn.

**A. Plaintiff Failed to Submit Evidence of Defendant's *Monell* Liability.**

Plaintiffs acknowledge in their opposition this Court's previous conclusion: that summary judgment is appropriate on their § 1983 claims unless Plaintiffs later submit evidence to support the School Board's *Monell* liability. R. Doc. 98 and 2. Plaintiffs state, however, that "[i]n the interest of efficiency . . . A.F. declines to offer new evidence or arguments in support of these claims . . . [and] he rests on the evidence and arguments presented in his original brief." *Id.* Because the Court has previously determined that Plaintiffs' original briefing and arguments did not show that a School Board policy or custom was the moving force of the constitutional violations, Plaintiffs do not have sufficient evidence of any *Monell* liability. *See* R. Doc. 81 at 16–22. The Court will now grant Defendant summary judgment on Plaintiffs' three § 1983 claims.

**B. Defendant Did Not Demonstrate Its Entitlement to Immunity Pursuant to La. R.S. § 9:2798.1 as a Matter of Law.**

Louisiana Revised Statute § 9:2798.1 provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. R.S. § 9:2798.1(B). Entities will be subject to liability nonetheless if one of two exceptions applies: first, if the acts or omissions were not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; and second, to acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct. *Id.* at (C).

Louisiana courts developed a two-step test that courts will use to determine if a party has established its entitlement to immunity. First, if the Court finds that a statute, regulation, or policy prescribes a particular course of action, then there is no discretion involved and immunity will not apply. *Doe v. ABC Sch.*, No. 2019-0983 (La. App. 1 Cir. 12/17/20), 316 So. 3d 1086, 1099. But if

6

the actions were discretionary, the Court must determine "whether that discretion is the kind that is shielded by the statutory immunity, that is, discretion grounded in social, economic[,] or political policy." *Id.* The statute protects the School Board from liability at the policymaking or ministerial level, but not at the operational level. *Id.* "In other words, when the government acts negligently for reasons unrelated to public policy considerations, it is liable to those it injures." *Aucoin v. Larpenter*, No. 2020-0792 (La. App. 1 Cir. 4/16/21), 324 So. 3d 626, 637, *writ denied*, No. 2021-00688 (La. 9/27/21), 324 So. 3d 87.

The School Board bears the burden of proving its entitlement to discretionary immunity because it is an affirmative defense. *Dominique v. St. Tammany Par.*, No. 2019-0452 (La. App. 1 Cir. 9/16/20), 313 So. 3d 307, 314, *writ denied sub nom. Dominque v. St. Tammany Par.*, 2020-01202 (La. 12/22/20), 307 So. 3d 1045. If the School Board establishes its entitlement to immunity, the burden shifts to Plaintiffs to show that there is some conduct that would fall under one of the two statutory exceptions, thus opening the School Board to liability. *Id.* at 314 n.6. The statute must be strictly construed against the party raising the argument. *Id.* at 314.

The School Board argues that Plaintiffs' state law negligent training and IIED claims are subject to dismissal under La. R.S. § 9:2798.1 because (1) the act of hiring the paraprofessionals "is unquestionably within the course and scope of the hiring principal's employment" and thus is the type of discretionary decision that the immunity statute covers, and (2) the School Board employee's responses to J.F. and L.F.'s public records request were also discretionary actions protected by immunity because the responses were in furtherance of the School Board's social policy of responding to a parents' video footage request. R. Doc. 94-1 at 21, 24. The Court takes each in turn.

### 1. No Immunity on Negligent Training Claim

The School Board submits that it is entitled to immunity on Plaintiffs' negligent training claim. Specifically, it explains that the School Board has policies that govern the qualifications for employment, but the hiring decisionmakers ultimately use their own discretion when they make their hiring choices, thus entitling them to immunity. R. Doc. 94-1 at 21. In furtherance of this position, the School Board offers the following hypothetical: a group of five candidates each meet the School Board's qualifications for employment, but only one position is available; the school's principal and other hiring decisionmakers have discretion to select which of the five candidates they will choose to employ. *Id.* The School Board argues that this hypothetical shows the discretionary nature of the hiring decision.

But the School Board misses the mark in addressing the conduct for which it should be afforded immunity. As discussed in the first summary judgment order and reasons, Plaintiffs premise their direct negligence claim against the School Board on the idea that it is directly liable based on its own negligent *training*. R. Doc. 81 at 27. Defendant briefly argues its immunity for negligent *hiring*. R. Doc. 94-1 at 21. Thus, the School Board fails to address how it should be afforded immunity from liability because its *training* decisions were both discretionary and related to social, economic, or political policies.

Even more, the School Board does not argue why the relevant discretionary decisions could not be categorized by a reasonable factfinder as simple "operational negligence in enforcing" and implementing existing training policies. *See Gregor v. Argenot Great Cent. Ins. Co.*, No. 2002-1138 (La. 5/20/03), 851 So. 2d 959, 968. In fact, Plaintiffs argue that reasonably jurors could disagree as to whether the training of School Board employees is operational. R. Doc. 98 at 5. Specifically, Plaintiffs submit that the School Board employs thousands of people and the training

of each individual employee "cannot sensibly be considered" to be policymaking because the training of each individual employee does not necessarily affect the overarching policies of the school system. *Id.* The Court is persuaded that a reasonable juror could view the School Board's actions in this way, especially in light of the School Board's limited arguments in support of its affirmative defense. Therefore, the Court cannot grant summary judgment in favor of the School Board because it has not met its burden of demonstrating that it is entitled to its statutory immunity affirmative defense on Plaintiffs' negligent training claim.

The Court notes that, even if Plaintiffs' direct negligence claim was wholly premised on negligence in the School Board's hiring decisions, the School Board's arguments would still fail at the summary judgment stage. As mentioned, the School Board failed to articulate how any purported discretionary hiring decisions related to a social, economic, or political policy. Indeed, it does not even reference the relevant statute, regulation, or policy that may have animated the School Board employees' discretionary hiring decisions to allow this Court to look to the statute to infer a social, economic, or policy concern. *See Dominique*, No. 2019-0452, 313 So. 3d at 316 (discussing the relevant animating statute and the presumption that "when government employees exercise discretion given to them by a statute or regulation, they are doing so based on the same policy concerns that animate the controlling statute or regulation itself"). Because Defendant bears the burden of proving its affirmative defense, this omission is fatal to the School Board's request for statutory immunity on any direct negligence theory. The Court will not grant the School Board discretionary immunity as to Plaintiffs' negligent hiring claim at the summary judgment stage.

### 2. No Immunity on Intentional Infliction of Emotional Distress Claim

The School Board similarly presses that it is entitled to discretionary immunity on Plaintiffs' IIED claim, which is based on J.F. and L.F.'s alleged severe emotional distress resulting

9

from School Board employees' responses to their requests for video footage. First, the School Board contends that the employees who responded to J.F. and L.F.'s requests were carrying out the discretionary actions of responding to parents' records requests, a task within the course and scope of their employment. R. Doc. 94-1 at 24. The School Board connects this discretionary action to the employees' furtherance of the "social policy [of] determining whether parents can view video footage and allowing the viewing when possible. *Id.* at 24. To the School Board, the employees' determination of when, if, and how a parent can view video footage is social policy insofar as it is "necessary to encourage the involvement of parents in the education of their children." *Id.* at 24–25.

The School Board fails to explain, however, how the processing of public records requests is unequivocally a discretionary action and not just an operational decision. While it is plausible that the timely and responsible handling a parent's public records request could be tied to a social policy of the School Board, the School Board failed to offer any more than these brief, conclusory statements. Plaintiffs, on the other hand, argue that a reasonable jury could conclude that a School Board employee's response to a discrete public records request is an "operational" rather than "policymaking" action. R. Doc. 98 at 5. Specifically, Plaintiffs contend that the School Board receives "hundreds, if not thousands, of public-records requests each year" and that "the response to any given request does not set policy for the school system." *Id.* This, to Plaintiffs, is evidence that "[r]esponses to public-records requests are in the heartland of 'operational' decisionmaking" and are thus not entitled to statutory immunity. R. Doc. 98 at 5.

The Court finds that Plaintiffs have raised sufficient fact issues to show that the School Board employees' decisions "were based on operational negligence—rather than public policy considerations—such that summary judgment on the basis of discretionary immunity would be

10

improper." *Gomez v. City of New Orleans*, No. 19-11803, 2023 WL 4351230, at *4 (E.D. La. July 5, 2023); *see also Mercadel v. State ex rel. Dep't of Pub. Safety & Corr.*, No. 2018-0415 (La. App. 1 Cir. 5/15/19), 2019 WL 2234404 at *5 (finding that a trial court erred in entering summary judgment in favor of warden on statutory immunity because the failure to inspect or maintain chairs in a penitentiary's visitor's center was an operational, rather than policymaking, decision/omission); *Sauceberry v. Webre*, No. 2016-0719 (La. App. 1 Cir. 5/5/17), 2017 WL 1788096, at *4–5 (discussing the distinction between a municipal entity's discretionary policy decision to offer a self defense class and the entity's employee's operational decisions made when implementing and hosting the self defense classes).

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's re-urged motion for summary judgment, R. Doc. 65, is **DENIED** in part and **GRANTED** in part. The motion is **DENIED** with prejudice as to Plaintiffs' state law negligent hiring/training and IIED claims. The motion is **GRANTED** as to all of Plaintiffs' § 1983 claims.

New Orleans, Louisiana, this 10th day of February, 2026.

_____
THE HONORABLE ELDON E. FALLON